IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.** _____ |
| v. | : | **DATE FILED:** _____ |
| **KARIM MESSAOUD**<br>**ANIS NASR** | : | **VIOLATIONS:** |
| | : | **18 U.S.C. § 1956(h)**<br>**(conspiracy to launder monetary instruments - 1 count)** |
| | : | **18 U.S.C. § 1956(a)(3)**<br>**(laundering monetary instruments - 35 counts)** |

### I N D I C T M E N T

### COUNT ONE

**THE GRAND JURY CHARGES THAT:**

1. From in or about April, 2000 to in or about September, 2002, in Philadelphia, in the Eastern District of Pennsylvania, defendants

**KARIM MESSAOUD**
**and**
**ANIS NASR**

conspired and agreed together and with other persons known and unknown to the grand jury, to commit an offense against the United States, that is, to knowingly conduct and attempt to conduct financial transactions with funds believed to be the proceeds of illegal drug trafficking, with the intent to conceal and disguise the true nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(3).

**MANNER AND MEANS**

2.  Title 31, United States Code, Section 5313 et. seq. requires that depository and financial institutions, and businesses conducting business with such institutions, report to federal and state authorities all financial and currency transactions that exceed $10,000 per person per day.

It was part of the conspiracy that:

3.  Defendants KARIM MESSAOUD and ANIS NASR arranged for domestic and international transfers of money they believed was the proceeds of illicit drug trafficking. To aid in the transfer of the drug money, defendants MESSAOUD and NASR structured the transactions to evade and defeat the currency transaction reporting requirements and permitted the use of false identification, fictitious names and fraudulent accounts to prevent discovery of the senders' true identities and to evade the reporting requirements.

4.  Defendants KARIM MESSAOUD and ANIS NASR met with undercover agents and others posing as members of a drug trafficking organization and discussed with them plans to conceal from the government deposits of cash and transfers of money through money remitting agencies. Their discussions included structuring money transfers so that they would each appear to be less than $10,000, thereby evading federal reporting requirements.

5.  In conspiring to structure and in structuring the financial transactions outlined in this indictment, defendants KARIM MESSAOUD and ANIS NASR split deposits that were greater than $10,000 into numerous deposits, each of which was less than $10,000, and used fake names and identification for each of those smaller sums, to avoid having the transfers reported to federal authorities.

6. Defendants KARIM MESSAOUD and ANIS NASR charged a percentage of each transaction as a fee in exchange for structuring the transactions for the undercover officers and others.

7. From at least April 25, 2000 through on or about December 24, 2000, defendant KARIM MESSAOUD owned and operated Wise Communications, a multiple service agency that provided domestic and foreign Western Union money transfers, cellular telephone sales and pre-paid telephone cards, located at 2024 Fairmount Avenue in Philadelphia, Pennsylvania. Defendant ANIS NASR was employed by and assisted in the operation of Wise Communications.

8. After on or about December 24, 2000, when Wise Communications stopped serving as an authorized Western Union service agency, defendants KARIM MESSAOUD and ANIS NASR arranged the transfer of money through other businesses and persons known and unknown to the grand jury.

9. From in or about April 2000 through in or about September 2002, defendants KARIM MESSAOUD and ANIS NASR transferred approximately $407,500 which they believed to be the proceeds of illegal drug activity.

## OVERT ACTS

In furtherance of the conspiracy, the following overt acts, among others, were committed in the Eastern District of Pennsylvania and elsewhere:

1. On or about April 25, 2000, defendant KARIM MESSAOUD transferred $.1000 using fake identification to the Dominican Republic via Western Union, believing that the funds were the proceeds of illegal drug trafficking.

2. On or about May 1, 2000, defendants KARIM MESSAOUD and ANIS NASR transferred $12,000 to the Dominican Republic by structuring the money into three Western Union transfers of $4,000 each and using false identification, believing that the funds were the proceeds of illegal drug trafficking.

3. On or about May 10, 2000, defendants KARIM MESSAOUD and ANIS NASR transferred $12,000 to the Dominican Republic by structuring the money into three Western Union transfers of $4,000 each and using false identification, believing that the funds were the proceeds of illegal drug trafficking.

4. On or about May 15, 2000, defendants KARIM MESSAOUD and ANIS NASR transferred $14,000 to the Dominican Republic by structuring the money into three Western Union transfers, namely two $5,000 transfers and one $4,000 transfer, and using false identification, believing that the funds were the proceeds of illegal drug trafficking.

5. On or about May 31, 2000, defendants KARIM MESSAOUD and ANIS NASR transferred $12,000 to the Dominican Republic by structuring the money into two Western Union transfers, one for $7,000 and one for $5,000, and using false identification, believing that the funds were the proceeds of illegal drug trafficking.

6. On or about June 6, 2000, defendants KARIM MESSAOUD and ANIS NASR transferred $12,000 to the Dominican Republic by structuring the money into three Western Union transfers of $4,000 each and using false identification, believing that the funds were the proceeds of illegal drug trafficking.

7. On or about June 8, 2000, defendant KARIM MESSAOUD transferred $9,000 to the Dominican Republic by splitting the money into two Western Union transfers, one for $5,000 and the other for $4,000, and using false identification, believing that the funds were the proceeds of illegal drug trafficking.

8. On or about June 14, 2000, defendants KARIM MESSAOUD and ANIS NASR transferred $12,000 to the Dominican Republic by structuring the money into three Western Union transfers of $4,000 each and using false identification, believing that the funds were the proceeds of illegal drug trafficking.

9. On or about July 6, 2000, defendant KARIM MESSAOUD transferred $6,000 to the Dominican Republic via Western Union by using a false name, believing that the funds were the proceeds of illegal drug trafficking.

10. On or about July 19, 2000, defendants KARIM MESSAOUD and ANIS NASR transferred $14,000 to the Dominican Republic by structuring the money into four Western Union transfers, two transfers of $4,000 and two transfers of $3,000, and using false identification, believing that the funds were the proceeds of illegal drug trafficking.

11. On or about July 21, 2000, defendants KARIM MESSAOUD and ANIS NASR transferred $12,000 to the Dominican Republic by structuring the money into three Western Union transfers of $4,000 each and using false identification, believing that the funds were the proceeds of illegal drug trafficking.

12. On or about July 25, 2000, defendant KARIM MESSAOUD and another

transferred $22,000 to the Dominican Republic by structuring the money into five Western Union transfers, one transfer of $6,000 and four transfers of $4,000, and using false identification, believing that the funds were the proceeds of illegal drug trafficking.

13. On or about July 26, 2000, defendant KARIM MESSAOUD and another transferred $8,500 to the Dominican Republic by splitting the money into two Western Union transfers of $4,000 each and using false identification, believing that the funds were the proceeds of illegal drug trafficking.

14. On or about August 10, 2000, defendant KARIM MESSAOUD and another transferred $16,000 to the Dominican Republic by structuring the money into three Western Union transfers, two transfers of $5,000 and one transfer of $6,000, and using false identification, believing that the funds were the proceeds of illegal drug trafficking.

15. On or about August 17, 2000, defendant KARIM MESSAOUD and another transferred $6,000 to the Dominican Republic via Western Union using a false name, believing that the funds were the proceeds of illegal drug trafficking.

16. On or about August 29, 2000, defendant KARIM MESSAOUD and others transferred $20,000 to the Dominican Republic by structuring the money into five Western Union transfers of $4,000 each and using false identification, believing that the funds were the proceeds of illegal drug trafficking.

17. On or about September 13, 2000, defendant KARIM MESSAOUD and others transferred $18,000 to the Dominican Republic by structuring the money into four Western Union transfers, two transfers of $5,000 and two transfers of $4,000, and using false identification, believing that the funds were the proceeds of illegal drug trafficking.

18. On or about November 29, 2000, defendant KARIM MESSAOUD and another transferred $9,000 to the Dominican Republic via Western Union, splitting the money into two transfers, one for $4,000 and one for $5,000, and using a false name, believing that the funds were the proceeds of illegal drug trafficking.

19. On or about December 4, 2000, defendant KARIM MESSAOUD and another transferred $12,000 to the Dominican Republic by structuring the money into three Western Union transfers of $4,000 each and using false identification, believing that the funds were the proceeds of illegal drug trafficking.

20. On or about June 20, 2001, defendants KARIM MESSAOUD and ANIS NASR and another transferred $20,000 to the Dominican Republic by structuring the money into three Western Union transactions, two of $7,000 and one transfer of $6,000, and using false identification, believing that the funds were the proceeds of illegal drug trafficking.

21. On or about June 26, 2001, defendants KARIM MESSAOUD and ANIS NASR transferred $36,000 by depositing monies into their own bank accounts and structuring the wire transfers into four transfers of $9,000 each and using false accounts, believing that the funds were the proceeds of illegal drug trafficking.

22. On or about August 10, 2001, defendant KARIM MESSAOUD and another transferred $34,000 by structuring the money into six Western Union transfers, four transfers of $6,000 and two transfers of $5,000, and using false identification, believing that the funds were the proceeds of illegal drug trafficking.

23. On or about June 13, 2002, defendant KARIM MESSAOUD and another

transferred $20,000 by structuring the money into four Western Union transfers of $5,000 each and using false identification, believing that the funds were the proceeds of illegal drug trafficking.

24.    On or about September 23, 2002, defendant ANIS NASR transferred $55,000 by depositing monies into his own bank accounts and structuring the wire transfers into four transfers of $9,000 each and one cashier's check for $28,000, and using false accounts, believing that the funds were the proceeds of illegal drug trafficking.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS TWO THROUGH TWENTY FOUR

**THE GRAND JURY FURTHER CHARGES THAT:**

1. Paragraphs 2 through 9 of the manner and means section of Count One are incorporated here.

2. Defendant KARIM MESSAOUD applied for and operated the Western Union service center through his business at Wise Communications by falsely representing that he was someone else with a good credit history.

3. Defendant KARIM MESSAOUD was provided with documentation and information from Western Union regarding the reporting requirements imposed by Western Union and the possible criminal penalties associated with violating the anti-money laundering and currency transaction reporting requirements of the Bank Secrecy Act.

4. On or about the dates set forth below, in Philadelphia, in the Eastern District of Pennsylvania and elsewhere, defendant

### KARIM MESSAOUD

knowingly conducted and aided and abetted the following financial transactions affecting interstate commerce:

| Count | Date | Defendant's Approximate Fees | Approximate Amount Laundered |
|---|---|---|---|
| 2 | 04/25/00 | $ 248 | $ 1,000 |
| 3 | 05/01/00 | $ 2,355 | $ 12,000 |
| 4 | 05/10/00 | $ 2,400 | $ 12,000 |
| 5 | 05/15/00 | $ 3,100 | $ 14,000 |
| 6 | 05/31/00 | $ 2,359 | $ 12,000 |

| | | | |
|---|---|---|---|
| 7 | 06/06/00 | $ 2,400 | $ 12,000 |
| 8 | 06/08/00 | $ 1,800 | $ 9,000 |
| 9 | 06/14/00 | $ 2,350 | $ 12,000 |
| 10 | 07/06/00 | $ 1,220 | $ 6,000 |
| 11 | 07/19/00 | $ 2,800 | $ 14,000 |
| 12 | 07/21/00 | $ 2,400 | $ 12,000 |
| 13 | 07/25/00 | $ 4,040 | $ 22,000 |
| 14 | 07/26/00 | $ 1,666 | $ 8,500 |
| 15 | 08/10/00 | $ 3,160 | $ 16,000 |
| 16 | 08/17/00 | $ 1,250 | $ 6,000 |
| 17 | 08/29/00 | $ 3,844 | $ 20,000 |
| 18 | 09/13/00 | $ 3,800 | $ 18,000 |
| 19 | 11/29/00 | $ 1,500 | $ 9,000 |
| 20 | 12/04/00 | $ 1,900 | $ 12,000 |
| 21 | 06/20/01 | $ 1,960 | $ 20,000 |
| 22 | 06/26/01 | $ 4,500 | $ 36,000 |
| 23 | 08/10/01 | $ 3,180 | $ 34,000 |
| 24 | 06/13/02 | $ 1,900 | $ 20,000 |
| | **TOTALS:** | **$56,132** | **$337,500** |

5. When conducting and aiding and abetting the financial transactions described in paragraph 4 above, defendant KARIM MESSAOUD believed that the property involved in those financial transactions represented the proceeds of some form of unlawful activity.

6. The financial transactions described in paragraph 4 above were represented to be proceeds of a specified unlawful activity, that is, illegal drug trafficking, in violation of Title 21, United States Code, Section 841, and defendant KARIM MESSAOUD acted with knowledge

that the transactions were designed, in whole and in part, to conceal and disguise the nature, location, source, ownership and control of what he believed were the proceeds of the specified unlawful activity, and with intent to promote the carrying on of specified unlawful activity, and knowing that the transactions were designed in whole and in part to avoid transaction reporting requirements under state or federal law.

      All in violation of Title 18, United States Code, Sections 1956(a)(3) and 2.

## COUNTS TWENTY FIVE THROUGH THIRTY FIVE

**THE GRAND JURY FURTHER CHARGES THAT:**

1. Paragraphs 2 through 9 of the manner and means section of Count One are incorporated here.

2. Defendant ANIS NASR was provided with documentation and information from Western Union regarding the reporting requirements imposed by Western Union and the possible criminal penalties associated with violating the anti-money laundering and currency transaction reporting requirements of the Bank Secrecy Act.

3. On or about the dates set forth below, in Philadelphia, in the Eastern District of Pennsylvania and elsewhere, defendant

**ANIS NASR**

knowingly conducted and aided and abetted the following financial transactions affecting interstate commerce:

| Count | Date | Defendant's Approximate Fees | Approximate Amount Laundered |
|---|---|---|---|
| 25 | 05/01/00 | $ 2,355 | $ 12,000 |
| 26 | 05/10/00 | $ 2,400 | $ 12,000 |
| 27 | 05/15/00 | $ 3,100 | $ 14,000 |
| 28 | 05/31/00 | $ 2,359 | $ 12,000 |
| 29 | 06/06/00 | $ 2,400 | $ 12,000 |
| 30 | 06/14/00 | $ 2,350 | $ 12,000 |
| 31 | 07/19/00 | $ 2,800 | $ 14,000 |
| 32 | 07/21/00 | $ 2,400 | $ 12,000 |

| | | | |
|---|---|---|---|
| 33 | 06/20/01 | $ 1,960 | $ 20,000 |
| 34 | 06/26/01 | $ 4,500 | $ 36,000 |
| 35 | 09/23/02 | $12,060 | $ 70,000 |
| | **TOTALS:** | **$36,684** | **$226,000** |

4.  When conducting and aiding and abetting the financial transactions described in paragraph 3 above, defendant ANIS NASR believed that the property involved in those financial transactions represented the proceeds of some form of unlawful activity.

5.  The financial transactions described in paragraph 3 above were represented to be proceeds of a specified unlawful activity, that is, illegal drug trafficking, in violation of Title 21, United States Code, Section 841, and defendant ANIS NASR acted with the knowledge that the transactions were designed, in whole and in part, to conceal and disguise the nature, location, source, ownership and control of what he believed were the proceeds of the specified unlawful activity, and with intent to promote the carrying on of specified unlawful activity, and knowing that the transactions were designed in whole and in part to avoid transaction reporting requirements under state or federal law.

All in violation of Title 18, United States Code, Sections 1956(a)(3) and 2.

                                      **A TRUE BILL:**

                                      **GRAND JURY FOREPERSON**

**PATRICK L. MEEHAN**
**UNITED STATES ATTORNEY**

13